IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MARILYN S. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-00667-MDH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of her application for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. Plaintiff has exhausted her administrative remedies and the matter is ripe for judicial review. The Court has carefully reviewed the files and records in this case and finds the opinion of the ALJ is supported by substantial evidence in the record as a whole. The decision of the Commission is **AFFIRMED**.

## BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and the parties' briefs, so they are not repeated here. To summarize, this case involves a 62-year old woman who applied for SSDI benefits due to alleged impairments including narcolepsy, asthma, osteoporosis, and osteoarthritis of the knees, hip, and back. The ALJ concluded she was not disabled after determining she suffered from severe impairments including osteopenia and osteoarthritis of the knees with effusion but finding she retained a residual functional capacity ("RFC") to perform a full range of light work and could therefore perform her past relevant work. Plaintiff appeals the final decision of the Commissioner arguing: (1) the ALJ erred by not

1

considering Plaintiff's narcolepsy a severe impairment, (2) the ALJ erred in the weight accorded to the medical opinions in the record, and (3) the ALJ erred in fashioning Plaintiff's RFC.

## STANDARD

Judicial review of the Commissioner's decision is limited to an inquiry concerning whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

## DISCUSSION

### A. ALJ did not err in finding Plaintiff's narcolepsy a non-severe impairment.

Plaintiff argues the ALJ erred by finding her narcolepsy was not a severe impairment. The record shows Plaintiff was diagnosed with "narcolepsy without cataplexy"[1] in 2011. The ALJ acknowledged Plaintiff's diagnosis but found Plaintiff's narcolepsy did not constitute a

---

[1] Narcolepsy is "is a sleep disorder consisting of recurring episodes of sleep during the day and often disrupted nocturnal sleep" and cataplexy is "a transient attack of extreme generalized muscular weakness, often precipitated by an emotional response, such as surprise, fear or anger." *McNeil v. Astrue*, No. 4:10 CV 2305 DDN, 2011 WL 2621705, at *1 n. 3-4 (E.D. Mo. July 5, 2011) (citing Stedman's Medical Dictionary, 324, 1281 (28th ed. 2006)).

2

severe impairment because "the medical record suggests that her narcolepsy was effectively regulated on medication in spite for her alleged side effect" and "she has been able to physically engage in her daily activities and continues to drive[.]"  Plaintiff argues the ALJ erred because the evidence shows her narcolepsy was not, in fact, effectively regulated by medication and that her "unpredictable narcolepsy spells and lack of alertness would clearly affect anybody's ability to perform a job."

"An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Where an impairment is effectively controlled by medication it "vitiates against finding that the impairment is severe."  *Ridenour v. Colvin*, No. 3:12-CV-5109-DGK-SSA, 2014 WL 293877, at *2 (W.D. Mo. Jan. 27, 2014) (citing *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011)).  Additionally, "[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."  *Id.*  (quoting *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *see also* 20 C.F.R. § 404.1530(a).

Here, the ALJ did not err in finding Plaintiff's narcolepsy was "effectively regulated on medication[.]"  The record shows Plaintiff tried the prescription medication Nuvigil and that it successfully prevented Plaintiff from falling asleep during the day.  Notes from Doctor Cokington indicate Plaintiff was "not as sleepy" and was "not taking naps" during the day while on the drug and Plaintiff reported that "[t]hat medicine . . . kept me from sleeping[.]"  Although Plaintiff ceased taking Nuvigil, substantial evidence in the record supports the ALJ's conclusion that Plaintiff's wakefulness problems were not significantly limiting because they were effectively controlled by medication.  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

3

To the extent Plaintiff argues she is significantly limited in her ability to work based on other symptoms associated with narcolepsy such as fatigue, lack of alertness, and concentration problems, the ALJ did not err in finding those impairments non-severe. Plaintiff failed to present sufficient evidence to show she suffers from those symptoms and that they are limiting. The only evidence in the record suggesting the above symptoms are self-reports by Plaintiff that were discounted by the ALJ and largely contradicted by the consultative psychological examination report.[2] Even assuming the above symptoms were shown to limit Plaintiff's mental ability to engage in basic work activities, the evidence shows Plaintiff stopped seeking treatment for such symptoms in October 2011 – just two months after she was diagnosed with narcolepsy – and that she tried only one type of medication to alleviate such symptoms.[3] The ALJ did not err in finding Plaintiff's alleged mental impairments were non-severe in light of the medical evidence in the record and Plaintiff's failure to seek treatment to alleviate those symptoms. *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("'While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem.'").

The Court further agrees with the ALJ that Plaintiff lacks good reason for her noncompliance with the prescribed course of remedial treatment for her narcolepsy. While Plaintiff claims she stopped taking Nuvigil because it was ineffective and/or accompanied by negative side effects such as fatigue and leg cramping, both Doctor Cokington and Doctor

---

[2] Doctor Barngrover's examination report makes the following observations: (1) "[t]here was no clouding of consciousness and she was able to understand and remember instructions"; (2) "[s]he was interested, diligent and persistent of tasks"; (3) "[t]he claimant was able to interact socially with me"; (4) "[i]t appears she can adapt to her environment"; and (5) "[h]er concentration was generally manageable" though it may deteriorate under stress.

[3] It is unclear what mental symptoms persisted while Plaintiff was on Nuvigil. While Plaintiff was no longer falling asleep while on Nuvigil, Doctor Cokington reported that Plaintiff was "not completely satisfied with Nuvigil" because "she feels tired" and "[s]he does feel alert like what she expected." He noted, however, that "[p]erhaps her expectations about how she was going to feel while taking Nuvigil were too high." Plaintiff testified at the hearing that "I mean it was, like, it would keep me up all day and night, and I wanted to take a nap and I wanted to go to sleep or just something. That medicine just kept me from sleeping, and I just felt horrible on it – just horrible on it, you know." The ALJ and Court are disadvantaged in otherwise determining the degree of Plaintiff's limitations while she was on Nuvigil because she stopped taking it after only a few weeks.

4

Barngrover advised Plaintiff that other medications were available to address her symptoms and improve her alleged drowsiness.[4] The record shows, however, that Plaintiff chose not to try any other drug, she never returned for her scheduled re-evaluation with Doctor Cokington, and she is not currently taking any medication for her narcolepsy because "I can work with it at home if I need a nap, I just take a nap, and I'm fresh and ready to go[.]" Based on the foregoing, the ALJ did not err in finding Plaintiff lacked good reason to stop seeking and following the prescribed course of treatment.

In sum, substantial evidence in the record as a whole supports the ALJ's finding that Nuvigil effectively treated Plaintiff's narcolepsy symptoms and that Plaintiff had no good excuse to justify her noncompliance with the prescribed course of treatment. The ALJ did not err in determining Plaintiff's narcolepsy was not a "severe impairment" under the social security regulations.

**B. ALJ did not err in weighing medical opinions in the record**

Plaintiff argues the ALJ erred in weighing various medical opinions contained in the record. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). In determining disability, the ALJ considers the medical opinions in the case together with the rest of the relevant evidence. *Id.* at § 404.1527(b). The weight to give to a particular medical

---

[4] Doctor Cokington advised Plaintiff there were other wake-promoting drugs available such as Provigil, Ritalin, and Adderall. He gave Plaintiff a seven-day prescription for Provigil and asked her to return for re-evaluation; however, Plaintiff never returned. Doctor Barngrover, an examining psychological consultant, noted that "[Plaintiff] prefers not to take other medications though they did give her other options to manage the narcolepsy." She opined that"[t]hough the claimant is not taking medication if she did it would probably help the daytime drowsiness." In the "recommendation" section of her report, Doctor Barngrover stated: "It is recommended that the claimant perhaps try medication and resume work life."

5

opinion is determined by various factors such as the examining relationship, the nature and length of the treatment relationship, the support provided for the opinion, consistency, and specialization. *Id.* at § 404.1527(c).

Plaintiff argues the ALJ erred in weighing Doctor Stevens' medical opinion. Doctor Stevens was hired as an agency medical consultant and affirmed the initial assessment made by the single decision maker and medical consultant that found Plaintiff could perform a full range of light work activities. The ALJ stated he gave "some weight" to Doctor Stevens' opinion; he relied on it to the extent he believed it was consistent with the evidence in the record as a whole but he rejected it to the extent he believed it was inconsistent. For example, the ALJ rejected the medical consultant's opinion insofar as it suggested mild restrictions for Plaintiff's right shoulder injury because, as the ALJ explained, following Plaintiff's shoulder surgery and physical therapy "there is no evidence that she has any persisting limitations regarding her range of motion in her right shoulder" and there were "minimal complaints recorded in the additional evidence submitted into the record at the hearing level." These statements show, contrary to Plaintiff's assertions, that the ALJ considered what medical information was not before the consultant (the physical therapy records and records submitted at the hearing level) and explained why he rejected a portion of the consultant's medical opinion (it was inconsistent with later-acquired evidence).[5] The ALJ did not err in weighing Doctor Stevens' medical opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"), (e)(2)(i) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants[.]").

---

[5] To the extent that Doctor Stevens' report did not cite Plaintiff's medical records concerning her knee and back, the record shows that the initial decision makers (whose assessment Doctor Stevens affirmed) clearly did consider such records and that the ALJ directly evaluated such evidence and found it consistent with an RFC of light work.

6

Plaintiff next argues the ALJ erred in weighing Doctor Barngrover's opinion. Doctor Barngrover was a non-treating consultative examiner who provided a medical opinion regarding Plaintiff's mental impairments. The ALJ gave "little weight" to the medical source statement offered by Doctor Barngrover, explaining that: "Finding that [Plaintiff's] narcolepsy symptoms have been previously controlled with medication, the undersigned gave some weight to the consultant when finding that the claimant's narcolepsy was non-severe while excluding Doctor Barngrover's limitations when formulating the residual functional capacity." The Court notes the ALJ's decision is not necessarily inconsistent with Doctor Barngrover's opinion. Although Doctor Barngrover suggested stress and pace limitations if Plaintiff were to return to work, she noted that Plaintiff was not taking any medications for her narcolepsy, which would probably help with daytime drowsiness. Doctor Barngrover ultimately recommended that "the claimant perhaps try medication and resume work life." The Court finds the ALJ did not inappropriately weigh Doctor Barngrover's opinion in light of the other evidence in the record. *See generally* 20 C.F.R. § 404.1527(d)(2) (the ALJ will use medical sources to provide evidence and opinion on the nature and severity of a claimant's impairments but the final responsibility for deciding issues such as RFC is reserved to the Commissioner).

Finally, Plaintiff argues the ALJ erred by failing to discuss the letter from Doctor Cokington that was written to excuse Plaintiff from jury duty. In that letter, Doctor Cokington stated that "[Plaintiff] has been diagnosed with Narcolepsy. Because of her disease process, she has difficulty maintaining wakefulness, despite medication and lifestyle modifications. Ms. Campbell's inability to maintain wakefulness makes her a poor candidate for jury duty." Letters regarding jury duty constitute opinions that are "not the type of specific medical opinions upon which a finding of disability can be made." *Lopez v. Massanari*, 30 F. App'x 19, 21 (3d Cir.

7

2002); *see also Davis v. Barnhart*, 197 F. App'x 521, 522 (8th Cir. 2006). Therefore, the ALJ did not err by failing to explicitly discuss the letter regarding jury duty.[6]

### C. ALJ did not err in fashioning Plaintiff's RFC

Upon review of both supporting and detracting evidence, the ALJ's RFC assessment that Plaintiff can perform a full range of "light work"[7] is supported by substantial evidence in the record as a whole. The ALJ considered all relevant evidence in the case record, including severe and non-severe impairments,[8] opinion evidence, the objective medical evidence, and Plaintiff's self-reported symptoms and limitations. 20 C.F.R. § 404.1545. The ALJ assessed Plaintiff's credibility in order to determine the limiting effects of her symptoms.[9] Tr. 26; *see* 20 C.F.R. § 404.1529; *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). Substantial evidence in the record as a whole supports the ALJ's conclusion that Plaintiff has only slight physical limitations

---

[6] The Court further notes that Doctor Cokington wrote this letter in January of 2013, which was nearly fifteen months after his last recorded evaluation of Plaintiff. It appears Doctor Cokington wrote the letter as a cautious attempt to have Plaintiff excused from jury duty, as the letter appears inconsistent with his previous statements that other medications were available to treat Plaintiff's symptoms and that Plaintiff was "not as sleepy" and was "not taking naps" during the day while on Nuvigil.

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[8] Plaintiff argues the ALJ did not consider her narcolepsy diagnosis when rendering an RFC; however, the record shows that the ALJ did consider Plaintiff's narcolepsy. Tr. 26. After finding Plaintiff's self-reported limitations related to narcolepsy not fully credible due to lack of medical evidence, inconsistencies in the record, Plaintiff's daily activities, and her failure to seek medical treatment, the ALJ cited the report of Doctor Barngrover and concluded no functional limitations were appropriate relating to Plaintiff's narcolepsy because "her narcolepsy symptoms have been previously controlled with medication." Tr. 26-27.

[9] The ALJ found Plaintiff's statements concerning intensity, persistence, and limiting effects of her symptoms were credible only to the extent they were consistent with the RFC. The ALJ made this credibility determination after considering the objective medical evidence, Plaintiff's extensive daily activities (e.g. household chores, yard work, dancing, etc.), her motivation to work, the degree of medical treatment sought by Plaintiff for the various alleged impairments, and other inconsistencies (i.e. applied for unemployment benefits while applying for SSDI). The ALJ provided good reasons for discounting Plaintiff's credibility and the Court will therefore defer to the ALJ's credibility assessment. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

based on Plaintiff's osteoarthritic knees, history of rotator cuff issues, and mild degenerative changes in her lumbar spine. Substantial evidence also supports the ALJ's conclusion that Plaintiff's ability to work is not limited by any mental impairments because her narcolepsy is effectively controllable by medication and she failed to comply with the recommended course of treatment. Upon review of all of the evidence of record, the Court finds the ALJ's RFC assessment is supported by substantial evidence in the record as a whole.[10]

## CONCLUSION

For the reasons set forth herein, there is substantial evidence in the record as a whole to support the ALJ's disability determination. Accordingly, the Commissioner's denial of benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: June 22, 2015

                                                         */s/ Douglas Harpool*
                                                         **DOUGLAS HARPOOL**
                                                         **UNITED STATES DISTRICT JUDGE**

---

[10] Plaintiff argues vocational expert testimony was required in order to assess Plaintiff's nonexertional impairments. Because the ALJ determined Plaintiff does not have any credible nonexertional impairments, no VE was required. *See generally Madison v. Astrue*, No. 4:11CV238 TIA, 2012 WL 996614, at *6 (E.D. Mo. Mar. 22, 2012).